IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICHARD DOUGLAS MURRAY SR.,

        Plaintiff,

v.                                                                                                               Civil Action No. 3:04-CV-103

EDWARD RUDLOFF, JAMES RUBENSTEIN,
BARBARA WHITE, and GLEN STOTLER,

        Defendants.

## REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION TO AMEND THE COMPLAINT BE DENIED AND DEFENDANTS' MOTIONS TO DISMISS BE GRANTED

### I. Background

On October 26, 2004, Plaintiff, Richard Douglas Murray, Sr., filed a *pro se* complaint[1] against the above-named defendants, except Defendant White, in their official capacities. Plaintiff seeks medical treatment or immediate release and compensatory damages.

At the time of filing his complaint, Plaintiff was incarcerated at the Eastern Regional Jail (ERJ) in Martinsburg, West Virginia.[2] Plaintiff raises a federal question because he alleges Defendants violated his Eighth Amendment rights giving the Court jurisdiction under 28 U.S.C.§1331. Specifically, Plaintiff alleges that he was, prior to incarceration, diagnosed with Hepatitis C, type I virus, needs to be treated for that virus, and Defendants have refused to provide

---

[1] Docket No. 1.

[2] Plaintiff was found guilty by a jury of DUI, 3rd, a felony, and drive [sic] while revoked for DUI, 2nd, a misdemeanor, on July 14, 2004 and January 15, 2004, respectively, and sentenced on August 5, 2004, with an effective sentence date of October 22, 2003 to 1-3 years on the felony and 1 year on the misdemeanor, consecutively, with the misdemeanor sentence to be served first.

1

him treatment for the virus. Plaintiff also alleges a failure to provide treatment for his arthritic right big toe, which has caused him excruciating pain and weight gain which almost prevents him from walking.

Specifically, Plaintiff asserts Defendant Rudloff, his custodian, must either provide him the necessary treatment for his conditions or release him. Plaintiff assets Defendant Rubenstein oversees the medical program. Plaintiff asserts Nurse White is in charge of the day to day medical functions of the ERJ and carrying out doctors' orders. Plaintiff asserts Defendant Stotler of the Morgan County Commission is responsible for paying the costs of all his medical treatments.

Defendant Commissioner Jim Rubenstein filed a Waiver of Reply and Motion to Dismiss on November 5, 2004.[3] Defendant Edward J. Rudloff filed a Motion to Dismiss on November 19, 2004[4] and a Motion for to Dismiss or, in the alternative, for Summary Judgment on November 22, 2004.[5] On November 24, 2004, Defendant Glenn Stotler filed a Motion to Dismiss or, in the alternative, for Summary Judgment.[6] Defendant, Barbara White filed Motion to Dismiss on December 6, 2004.[7] On February 14, 2005, the Undersigned sent a Roseboro notice to the *pro se* Plaintiff Richard Douglas Murray, Sr., advising him of his right to file counter-affidavits or other responsive material and that his failure to so respond might result in the entry of an order granting

---

[3] Docket No. 5.

[4] Docket No. 12.

[5] Docket No. 13 (The Court subsequently granted a motion to withdraw this motion. Docket No. 25).

[6] Docket No. 14.

[7] Docket No. 19.

Defendants' Motions to dismiss in accordance with Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). Plaintiff was given thirty days to file any responses to the Defendants' Motions to Dismiss. Plaintiff filed Objections to Magistrate Judge's Order on March 11, 2005.[8]

The Undersigned filed a Report and Recommendation,[9] dated July 29, 2005, recommending that the action be dismissed unless Plaintiff prove that he exhausted his administrative remedies.

Plaintiff filed his Objections to the Report and Recommendations,[10] dated August 15, 2005, showing he filed a level 3 Grievance on July 13, 2005, which was denied by the Commissioner on August 2, 2005. The same day, Plaintiff also filed two motions to amend the complaint as to Dr. Hoffman and PA McLaughlin.[11]

## II. Standard of Review

A. Motions to Dismiss

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir.1990). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the

---

[8] Docket No. 32.

[9] Docket No. 34.

[10] Docket No. 35.

[11] Docket No. 36 and 37.

allegations of the complaint. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

<u>B. Motions for Summary Judgment</u>

From the text of Rule 56(c) of the Federal Rules of Civil Procedure, it is clear that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Motions for summary judgment impose a difficult standard on the moving party; for, it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir.1990).

"When a motion for summary judgment is made . . . an adverse party may not reset upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It

4

is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Summary judgment is not appropriate until after the nonmoving party has had sufficient opportunity for discovery. See Oksanen v. Page Memorial Hosp., 912 F.2d 73, 78 (4th Cir.1990), superseded on rehearing, 945 F.2d 696 (4th Cir.1991).

### III. Analysis

A. Exhaustion of Administrative Remedies

Defendants maintain that the Plaintiff's claim should be dismissed because Plaintiff failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. §1983 must first exhaust all available administrative remedies. 42 U.S.C. § 1997e. Exhaustion as provide in §1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002).[12] Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741.

The Fourth Circuit has determined that the PLRA does not require a prisoner to allege

---

[12] In Porter, an inmate sued the correctional officers who had severely beaten him. The inmate alleged that the correctional officers "placed him against a wall and struck him with their hands, kneed him in the back, [and] pulled his hair." Porter, 534 U.S. at 520.

that he has exhausted his administrative remedies. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005). The Fourth Circuit further found that exhaustion is an affirmative defense, but that a district court may dismiss the complaint where the failure to exhaust is apparent from the face of the complaint or that the court may inquire "on its own motion into whether the inmate exhausted all administrative remedies." Id. 683.

The Regional Jail Authority has a three-step grievance process. First, the prisoner must file a level one grievance with the Administrator. If unsatisfied with the Level 1 decision, the prisoner may proceed to Level 2 by filing an appeal with the Chief of Operations and then may proceed to level 3 by requesting a review by the Executive Director.

On July 29, 2005, the Undersigned Ordered Plaintiff to prove that he exhausted his administrative remedies. In response to the Court's order, on August 15, 2005, Plaintiff provided the Court with copies of the grievances he filed. Plaintiff filed his G-1 grievance with Mr. Hamrick, his unit manager, on June 20, 2005. On July 11, 2005, Plaintiff filed his G-2 grievance form. On July 13, 2005, Plaintiff proceeded to level 3 by requesting a review of his Level 1 and Level 2 decisions from Jim Rubenstein, Commissioner. As evidenced by the documentation provided by Plaintiff, he did not exhaust his administrative remedies prior to filing the instant action. However, exhaustion must be completed before the action is filed. See 42 U.S.C. §1997e(a); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).[13]

---

[13]The first circuit noted the following circuits had ruled on the issue of whether exhaustion could be completed during the pendency of the civil action :
> Neal v. Goord, 267 F.3d 116, 123 (2d Cir.2001) ("[A]llowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); Jackson v. Dist. of Columbia, 254 F.3d 262, 268-69 (D.C.Cir.2001) (rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th

Consequently, Plaintiff's complaint should be dismissed because he failed to exhaust his administrative remedies prior to filing the instant action. Even if the Court were to find that Plaintiff may exhaust his administrative remedies during the pendency of his complaint, as discussed in the following sections, the complaint should still be dismissed.

B. Cognizable Claim Upon which relief may be granted

Defendants maintain that Plaintiff's claim should be dismissed because Plaintiff has failed to state a federally cognizable claim upon which relief may be granted.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). In order to establish an Eighth Amendment violation, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

---

Cir.1999) ("The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir.1999) ("An inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir.1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."). But see Williams v. Norris, 176 F.3d 1089, 1090 (8th Cir.1999) (per curiam) (reversing district court's dismissal for failure to exhaust where "the record demonstrated that [plaintiff's] grievance had been denied ... at the time the court ruled").

Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st 2002).

With regard to claims of inadequate medical attention, the objective component is satisfied by a serious medical condition. A medical condition is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987), cert. denied, 486 U.S. 1006 (1988). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth v. Lanzaro, 834 F.2d at 347.

The prisoner may satisfy the subjective component of a "cruel and unusual punishment" claim by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "[A]cting or failing to act with deliberate indifference to a substantial risk to a prisoner is the equivalent of recklessly disregarding that risk." Id. at 836. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to

8

fundamental fairness. Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.1990); Norris v. Detrick, 918 F.Supp. 977, 984 (N.D.W.Va.1996), aff'd, 108 F.3d 1373 (4th Cir.1997). However, negligence or malpractice does not violate the Eighth Amendment. Estelle, 429 U.S. at 106.

The Undersigned finds that Plaintiff has a serious medical condition. Plaintiff's postive diagnosis for Hepatitis Type C virus, evidenced by the report of Winchester Open MRI and Imaging Center and the report of Dr. Kitchin, which are attached to the complaint, establish a serious medical condition. Thus, Plaintiff has met the objective component of an Eighth Amendment claim. However, Plaintiff has not alleged sufficient facts to satisfy the subjective component.

Plaintiff alleges that he has been subjected to "cruel and unusual punishment" as a result of Defendants' refusal to treat him for Hepatitis C diagnosis and for the bone formation on his foot and requests that Defendants provide him with the treatments for his conditions. There are, however, no specific allegations of deliberate indifference against Defendants Rudloff, White and Stotler. Negligence or malpractice is not sufficient. Plaintiff, for example, does not allege that Defendants Rudloff, White and Stotler demonstrated actual intent, improper motives or reckless disregard. Therefore, the Undersigned recommends that Plaintiff's complaint against Defendants Rudloff, White and Stotler be dismissed.

With regard to Defendant Rubenstein, Plaintiff alleges that Defendant Rubenstein "has authority to manage and administer the...operations...and personnel" and, therefore, "could have then or now 'made the call' to remedy Mr. Murray's pain and suffering." However, no allegation has been made that Defendant Rubenstein had any connection with any denial of

9

medical care.

The Undersigned finds that Plaintiff's allegations do not give rise to a claim of deliberate indifference. Plaintiff states that his gastroenterologist, Dr. Llewellyn I. Kitchin, diagnosed him with Hepatitis C, type I, and recommended the appropriate treatment. In his report, Dr. Kitchin opined that "patients who have type I virus have successful treatment in the 50-60% range after one year of therapy." Dr. Kitchin further stated that "treatment may be worthwhile for [Plaintiff], with the knowledge that it is imperfect at best and involves many side effects." See, Plaintiff's Objections to the Report and Recommendations, p.19. Plaintiff's G-2 grievance form, dated July 11, 2005 and signed by Acting Warden Teresa Waid, states that Plaintiff provided a copy of his records to CMS on July 11, 2005. It also provides that, "These records will be reviewed by the physician and a treatment plan provided in accordance with that review and evaluation." See, Plaintiff's Objections, p. 9. The fact that medical providers disagree on the course of treatment does not support a claim that the Eighth Amendment has been violated. Additionally, Plaintiff's allegations demonstrate that he believes he should undergo surgery for the bone formation on his right foot. However, the Undersigned finds that Plaintiff merely alleges negligence or malpractice, which does not state a claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment. A mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged, does not give rise to an Eighth Amendment claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Thus, the Undersigned recommends that Plaintiff's complaint against Defendants be dismissed.

C. Eleventh Amendment

Defendant Rudloff maintains that Plaintiff's claims should be dismissed because Plaintiff's claims are barred by the Eleventh Amendment to the United State Constitution and the Will Doctrine.

Under the Eleventh Amendment, "a State cannot be sued directly in its own name regardless of the relief sought," absent consent or permissible congressional abrogation. Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985). And for purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity. See, Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102-103 (1984); Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989)(state official is not a "person" suable under 42 U.S.C. §1983).

In trying to determine in what capacity Defendant Rudloff was sued, the Undersigned looked at the complaint. The caption of the complaint lists as a Defendant "Edward J. Rudloof, *Administrator, E.R.J., et al.*" (emphasis added). This style suggests that Defendant Rudloff was sued in his official capacity, as the Administrator of the Eastern Regional Jail, not as an individual. Therefore, Defendant Rudloff is not "a person" under §1983. The Undersigned recommends that Plaintiff's action against defendant Rudloff be dismissed because Plaintiff's claims are barred by the Eleventh Amendment.

D.  Qualified Good Faith Immunity

Defendants Rubenstein and Rudloff maintain that Plaintiff's claims should be dismissed because qualified good faith immunity shields Defendants from liability.

Governmental officials performing discretionary functions are entitled to qualified immunity from civil liability to the extent "their conduct does not violate clearly established

11

statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

To determine whether Defendants Rubenstein and Rudloff are entitled to qualified immunity, we must (1) identify the right allegedly violated; (2) consider whether at the time of the alleged violation the right was clearly established; and (3) determine whether a reasonable person in defendant's position would have known that his actions would violate that right. Gomez v. W.J.Atkins, 295 F.3d 253, 261 (4th Cir. 2002).

As discussed above, the facts presented by Plaintiff allege no violation of his constitutional right, and, therefore, the Undersigned concludes that Defendants Rubenstein and Rudloff are entitled to qualified immunity. Thus, the Undersigned recommends that Plaintiff's complaint against Defendants Rubenstein and Rudloff be dismissed.

E. Medical Professional Liability Act

Defendants White and Rudloff maintain that Plaintiff's case should be dismissed because Plaintiff did not comply with the prerequisites for filing an action under the Medical Professional Liability Act. W.Va §55-7B-6(b).

As was mentioned above, Plaintiff's allegations do not amount to a charge of deliberate indifference to a serious medical need, but are an assertion of negligence or malpractice, actionable under state tort law, not actionable under §1983. Estelle, 429 U.S. at 105-06.

With regard to medical malpractice actions in West Virginia, W.Va. Code §55-7B-6(b) requires that, at least thirty days prior to the filing of a medical professional liability action

against a health care provider, the claimant serve by certified mail, return receipt requested, a notice a claim and a certificate of merit. The notice of claim is to provide a statement of the theory of liability upon which a claim may be based. The certificate of merit is to be executed under oath by a health care provider as an expert under the West Virginia Rules of Evidence and state with particularity the expert's familiarity with the applicable standard of care, the expert's qualifications, the expert's opinion as to how the applicable standard of care was breached and the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death.

The Undersigned will not speculate as to Plaintiff's intention when he filed his claims. If Plaintiff did, in fact, intend to file a medical malpractice action, he failed to comply with the requirements of W.Va. Code §55-7B-6(b). For the foregoing reasons, the Undersigned recommends that Plaintiff's action be dismissed.

F.  Service of Summons and Complaint

Defendant White maintains that Plaintiff's case should be dismissed because Plaintiff failed to effect service of the Summons and Complaint upon her in a manner consistent with Rule 4 of the Federal Rules of Civil Procedure.

A review of the record suggests that plaintiff sued Defendant White, a Prime Care employee, in her individual capacity. For example, in his complaint, Plaintiff notes that "it is also common knowledge that Ms. White's salary is based on the monthly expenditures of Prime Care."

To serve an individual under Rule 4(e)(1), a plaintiff must look to the law of the state in which the district court is located. Fed. R. Civ. P. 4(e)(1). Plaintiff, in this case, therefore, must

13

comply with the service requirements of the State of West Virginia. Under the law of West Virginia, a plaintiff may effect service by mailing a copy of the summons and complaint, returned receipt requested and delivery restricted to the addressee to the intended defendant. W.Va.R.Civ. P. 4(d)(1)(D). To effect service under Rule 4(e)(2), which does not refer to state law, a plaintiff must personally deliver a copy of the summons and complaint to the intended defendant, a person of suitable age and discretion residing at the intended defendant's place of residence, or an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2).

In this case, Plaintiff has not perfected service of process under Rule 4(e)(1) or (2) on defendant White. A review of the record suggests that Plaintiff's Power of Attorney had sent the summons and complaint to defendant White by certified mail. However, an examination of the return receipt indicated that the "Restricted Delivery" box remained unchecked. See Exhibit A, Defendant White's Motion to Dismiss. Additionally, it is unclear from the record whether Defendant White, who did not sign the return receipt, authorized the individual who did sign it to receive service of process. Thus, the Undersigned recommends that Plaintiff's complaint against Defendant White be dismissed.

G. Respondeat Superior

Defendant Rubenstein maintains that Plaintiff's case should be dismissed because Plaintiff cannot advance liability under a *respondeat superior* theory.

*Respondeat superior* generally is inapplicable to §1983 lawsuits. Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978). To establish a viable claim for *respondeat superior* liability under §1983, plaintiff must demonstrate: (1) actual or constructive knowledge of a risk

14

of constitutional injury; (2) deliberate indifference to that risk; and (3) an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury plaintiff suffered. Cater v. Morris, 164 F.3d 215, 221 (4th Cir. 1999)(quoting Shaw v. Stround, 13 F.3d 791 (4th Cir. 1994)).

Here, the undersigned finds that Plaintiff makes absolutely no allegations in his complaint which reveal the presence of the required elements for supervisory liability under §1983 against Defendant Rubenstein. Plaintiff alleged no facts nor presented any evidence showing that the Defendant Rubenstein gave orders or set any policy as to lead to a constitutional injury to Plaintiff. The fact that he supervised individuals who provided Plaintiff's medical care is insufficient, standing alone, to create liability under §1983, absent a constitutional injury.

Further, the Undersigned notes that the Fourth Circuit has held that non-medical personnel may rely on the opinion of medical staff regarding the proper treatment of inmates. Miltier v. Beorn, 896 F. 2d 848 (4th Cir. 1990). Thus, Defendants Rubenstein could rely on the opinions of medical staff regarding the treatment Plaintiff needed. Consequently, the Undersigned finds that Plaintiff has failed to state a claim against Defendant Rubenstein.

H.  Plaintiff's Motions to Amend

Plaintiff argues that he should be permitted to amend his complaint to add "Debrah MH. McLaughlin, PA, Morgan County" and "Dr. Hoffman, Ph.D., Prime Care Inc." as defendants.

Under Federal Rule of Civil Procedure 15(a), a plaintiff is entitled to amend the complaint once as a matter of right. After a responsive pleading has been served, a party may amend its pleadings "only by leave of court or by written consent of the adverse party; and leave

15

shall be freely given when justice so requires." See also, Smith v. Blackledge, 451 F.2d 1201 (4th Cir. 1971) (motion to dismiss is not a responsive pleading under Rule 15 (a)).

Generally, a *pro se* litigant's pleadings should be construed liberally to avoid inequity, and the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. See, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). If a *pro se* complaint contains a potentially cognizable claim, the plaintiff should be given an opportunity to particularize his allegations. See, Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965) (per curiam). It should be noted that, while *pro se* pleadings are to be construed liberally, a district court is not required to assume the role of advocate for the *pro se* plaintiff. Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997).

In this case, because a responsive pleading had been filed by defendant Stotler, the court must then decide whether Plaintiff is entitled to amend his complaint. As a general rule, a district court should deny a motion to amend only "'when an amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" HCMF Corp. v. Allen, 238 F.3d 273, 276 (4th Cir. 2001). See also, Davis v. Piper Aircraft Corp., 615 F.2d 606 (4th Cir. 1980)(when proposed amendment is clearly futile, denial is proper), cert. denied, 448 U.S. 911 (1980). As discussed above, Plaintiff's complaint should be dismissed. Further, Plaintiff fails to set forth any viable claims against Debrah McLaughlin or Dr. Hoffman. Accordingly, because any amendments to Plaintiff's complaint would be futile, the Undersigned recommends that Plaintiff's motions to amend be denied.

## IV. Decision and Recommendation

For the foregoing reasons, Plaintiff's motions to amend the complaint are denied, and I

16

recommend that Defendants' Motions to Dismiss/Motions for Summary Judgment be granted.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should be submitted to the District Court Judge of Record.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the Unites States District Court for the Norther District of West Virginia.

DATED: August 26, 2005

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE